UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. 1:07-CR-00023 |
|  | : |  |
| v. | : |  |
|  | : | **OPINION AND ORDER** |
|  | : |  |
| RODNEY DYSON. | : |  |
|  | : |  |

This matter is before the Court on Defendant's Motion to Suppress (doc. 20) and the United States' Response (doc. 21). The Court held a hearing on such Motion on April 12, 2007, which it continued until April 17, 2007. For the reasons indicated herein, the Court DENIES Defendant's Motion.

**I. Background**

On February 7, 2007, the Grand Jury indicted Defendant as a felon in possession of firearms in contravention of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (doc. 14). Defendant's present motion pertains to the warrantless search of Defendant's car by Lockland and Springfield Township Police Officers on October 12, 2006, which Defendant contends was not based on reasonable suspicion and therefore violated his Fourth Amendment right to be free of unreasonable search and seizure. Defendant seeks to suppress the firearms, a Leinad Cobray PN-11 Mac-10 (the "Cobray") and a Ruger P90 .45 caliber (the "Ruger"), and ammunition, seized incident to his arrest because he argues the police had no justification to

search his vehicle.

## II.  Witness Testimony

        At the hearing, Lockland Patrol Officer Daniel Lyons testified before the Court that on October 12, 2006, he was dispatched to an accident between a green Suburban and a smaller Ford vehicle on I-75 South, just off the exit 12 ramp.  As the accident was in close proximity to his Police Department, Lyons estimated that he was on the scene within less than two minutes of when the accident occurred.  Lyons testified he first checked on the occupant of the Ford, for whom he called an ambulance, and then he made his way over to the Suburban.  When he arrived at the Suburban, he said he found several individuals removing items from the Suburban, and in the course of obtaining their identifications, he detected a strong odor of raw marijuana.  A third-party witness to the accident, who was otherwise uninvolved, stayed on the scene so as to report to Officer Lyons that as soon as the accident had happened, she saw an individual exit the vehicle with a box and go up the exit ramp, and then return to continue removing items.

        Lyons found the driver of the Suburban to be obviously at fault, and Lyons placed her in the back of his police cruiser to get her account of how the accident occurred.  During this questioning of the driver, Lockland Police Sergeant Reynolds arrived at the scene and used her cruiser to block off the exit ramp for safety purposes.  Sergeant Reynolds walked down the ramp

and confirmed to Lyons that she also smelled raw marijuana in the wrecked Suburban. The Officers agreed to call a narcotics canine to the scene.

According to Lyons, Sergeant Reynolds then returned up the ramp to her vehicle. During approximately the next ten minutes, while Lyons was issuing the citation to the driver of the Suburban, he testified he learned over the radio from Sergeant Reynolds that the individuals removing items from the Suburban were placing them in a white Nissan Maxima. The Maxima was parked in the parking lot of a Marathon gas station across the street from the exit ramp. Lyons testified that he had investigated many accidents, and the activity of the individuals in removing the items, and being so apparently unconcerned about the accident or the driver, made him suspicious. Lyons testified that he stayed at the accident scene and waited for a tow truck to arrive to take the wrecked vehicles away.

At this point, the Canine Unit, Springfield Township Officer Greg Huber, and his canine partner "Bear," arrived on the scene.[1] Huber testified that as the Suburban was surrounded by broken glass, he did not want to risk injury to Bear, so he declined to have Bear sniff the Suburban. Lyons testified that he

---

[1] The Court heard testimony and entered Exhibits 4(a) through (q) concerning the qualifications and certification of both the dog-handler and canine in this case, and finds no question that Officer Huber and Bear are eminently qualified to reliably conduct narcotic searches.

and Officer Reynolds determined that the Suburban was now in their possession, and they were going to concentrate on the packages transported to the white Maxima at the Marathon gas station.

Officer Huber testified that when he arrived at the gas station, he saw Defendant next to the car, and that Defendant told Huber the car belonged to Defendant. Huber further testified that Sergeant Reynolds told Huber the officers had a verbal consent to search the car, and they believed there were possibly narcotics in the car. Huber therefore followed his normal procedure with Bear, starting counterclockwise at the trunk of the Maxima, taking a lap around the vehicle and then returning clockwise. Huber testified that Bear positively indicated for the smell of narcotics by scratching at the seam of the trunk and at the front of the car on the driver's side under the hood. Huber further testified that Defendant said nothing to him, nor objected, nor tried to stop Huber from taking Bear around the Maxima.

According to Lyons, by the time he cleared the accident scene and went up the ramp to the Marathon gas station parking lot, Bear was already back in Huber's cruiser, after having sniffed around the white Maxima. Lyons testified that Huber advised him that Bear had indicated as to the smell of narcotics in the trunk area and the driver's front engine compartment under the hood.

Lyons states that when he saw Defendant, he recognized Defendant as having a prior history in trafficking narcotics.

4

Lyons stated he asked Defendant if Defendant owned the Maxima, and Defendant indicated yes. Defendant further indicated he owned the contents in the vehicle. Lyons informed Defendant that the dog indicated as to the smell of narcotics. Lyons testified that at this point Defendant consented to a search of the trunk and interior of the Maxima. Upon cross-examination, Lyons conceded that Defendant stated "I don't want you to but you're going to search anyway."

Officers Huber and Lyons commenced to search the Maxima. Lyons testified that he searched the trunk of the car, found the majority of the items he saw transferred from the Suburban, but found no contraband in the trunk. While Officer Lyons searched the back passenger seat of the car,[2] Officer Huber reached into the car to pop the hood latch. Huber had difficulty getting the hood latch to release, and he stated Defendant told him the car had been worked on such that Huber needed to pull the hood release again. Huber noticed at this point that Defendant seemed nervous, and Defendant moved to the front of the vehicle, so as to lift the hood.

At this point Huber testified that Defendant opened the hood of the car, grabbed a gun from inside the engine block that

---

[2] It is unclear from the record whether it was at this point or during a subsequent search, but Lyons testified he detected the faint smell of marijuana inside the Maxima, and saw remnants of marijuana as well.

5

was partially wrapped in a towel, and took off running. Huber yelled "gun," and he and Lyons gave chase after Defendant. After the officers apprehended Defendant, they secured the Cobray pistol, as government's Exhibit number 1, and further search of the Maxima yielded the Ruger and ammunition, government's Exhibits 2, 3(a) and 3(b).

## III.  Discussion

Defendant's Motion to Suppress is premised on the theory that he did not consent to the search by the officers, and the officers had no reasonable suspicion to justify an investigation under Terry v. Ohio, 392 U.S. 1 (1968) (doc. 20). To be valid under the Fourth Amendment, evidentiary searches and seizures must be reasonable. The general rule is that absent consent to search, a warrant, supported by probable cause, is required. Should the Court determine the officers obtained consent to search from Defendant, the resulting search comported with constitutional principles.

A brief investigative stop does not constitute a search or seizure under Terry v. Ohio, 392 U.S. 1 (1968), and it falls outside the warrant requirement. Such an investigative stop need only be supported by a reasonable suspicion. In reviewing the legality of Terry stops, courts must consider the "totality of the circumstances" of each case, so as to determine whether the detaining officer has a "particularized and objective basis" for

6

suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002).

The Court found at the April 17, 2007 hearing that the testimony before the Court does not clearly establish Defendant verbally consented to the search of his vehicle. Although Officer Huber testified that Sergeant Reynolds told him she had obtained verbal consent to conduct the canine sniff, the government did not proffer the testimony of Reynolds, although she was present in the courtroom. The testimony further shows that, subsequent to the canine sniff, when Lyons informed Defendant of the result and requested permission to search the Maxima, Defendant responded to the effect of "I don't want you to but you're going to search anyway." Such statement is akin to an expression of futility in resistance to authority, rather than a knowing, voluntary, and unequivocal consent, as required under United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999). The Court finds well-taken Defendant's position that at this point in time of the investigation, the government has failed to establish Defendant's consent to a search of his vehicle.

For this reason, the core inquiry is narrowed down to the question of whether the government has adequately established that it had reasonable suspicion justifying the canine sniff. Defendant acknowledged that if there is reasonable suspicion for a canine search, and the canine positively alerts on a vehicle, then there

is probable cause for a search. The Court agrees. <u>United States v. Hill</u>, 195 F.3d 258, 273 (6th Cir. 1999)(probable cause can be established when a properly trained and reliable dog alerts to the presence of contraband in a vehicle). The practical result in the case at hand is that if the canine search was justified, then the officers acted reasonably in their subsequent search of the interior of the Maxima, and there really is no basis to suppress the firearms the officers ultimately discovered both in plain view and incident to Defendant's arrest.

The Supreme Court, in <u>United States v. Place</u>, 462 U.S. 696, 707 (1983), held that a canine sniff does not constitute a search within the meaning of the Fourth Amendment, but is rather a investigative procedure of limited intrusiveness. Although <u>Place</u> involved the search of baggage and not an automobile, the Court finds the same principles clearly apply to a car parked in a public place, where there is a limited expectation of privacy. Accordingly, a canine sniff is an investigative technique officers can properly use under <u>Terry</u> if the officers have a reasonable suspicion for suspecting the presence of narcotics.

The government essentially offers two basic justifications for the proposition that the officers had reasonable suspicion to conduct a canine sniff of Defendant's Nissan Maxima. First, the government argues that the transfer of items so quickly after the accident from the Suburban to the Maxima triggered the

8

reasonable suspicion that something was awry. Indeed, a third-party witness made a special effort to tell Officer Lyons about an almost immediate transfer of some sort of box up the exit and away from the scene. Second, two of the Officers smelled the strong smell of marijuana in the crashed Suburban. United States v. Koger, 152 Fed. Appx. 429, 430-31 (6th Cir. 2005)(the detection by officers of the smell of marijuana emanating from a vehicle provides both reasonable suspicion for further investigation, and probable cause to search a car). The officers knew, therefore, that there could be something more going on than a regular traffic accident. The government suggests the officers reasonably could have concluded the transferred items included contraband.

Defendant argues that people transfer items out of wrecked cars all the time, as they do not want to be forced to make a trip to an impound lot at a later date. Defendant further argues that the smell of marijuana in the Suburban gave rise to probable cause to search the Suburban, but not the Maxima. Defendant argues the applicable standard of Terry v. Ohio, 392 U.S. 1 (1968), requires articulable facts that criminal activity may be afoot and particularized suspicion that a particular individual being stopped is engaged in wrongdoing. In this case, argues Defendant, the Officers did not see the Maxima involved in any traffic violation or crime, and did not even know who the owner was before directing Huber to the Maxima to conduct the canine sniff. According to

9

Defendant, the officers therefore were only acting on a hunch.

In <u>Terry</u>, the officer observed two individuals pacing back and forth in front of a store, peering into the window, and periodically conferring. 392 U.S. at 5-6. The conduct the officer observed was lawful, but it also suggested the individuals were casing the store for a planned robbery. The <u>Terry</u> decision recognized that the officer could briefly detain the individuals to resolve the ambiguity. 392 U.S. at 30. To make an investigative stop, police must have reasonable suspicion supported by articulable facts that criminal activity may be afoot. <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989).

Here, the conduct the Officers observed in relation to the Maxima could be viewed as lawful, but the rapid evacuation of the items from the Suburban, which smelled so strongly of marijuana, also suggested the individuals were attempting to hide contraband from the authorities by placing it in the Maxima. These articulable facts justified the officers' action in conducting a brief, non-intrusive canine sniff of the Maxima, so as to resolve the ambiguity. The officers were acting upon more than a hunch. Although the Court sees no requirement that the officers should have identified the owner of the car prior to the canine sniff, the record reflects that Officer Huber did so.

After the canine alerted to the vehicle, the "automobile exception" to the warrant requirement applied, as the officers then

10

had probable cause to believe the Maxima contained evidence of a crime. United States v. Pasquarille, 20 F. 3d 682, 690 (6th Cir. 1994). The Court notes, without deciding, that Defendant's subsequent actions in helping Officer Huber open the hood to his car, may have also constituted a consent to the search of the engine block. In any event, the canine sniff provided the Officers with the justification to conduct the search, which ultimately yielded the contraband the Defendant seeks to suppress.

The remaining issue before the Court relates to statements Defendant made to the Officers prior to his arrest. Any one in custody of the police and accused of a crime, no matter how minor, must be given Miranda warnings prior to interrogation by police. Berkemer v. McCarty, 468 U.S. 420(1984). Miranda warnings need not be given in the context of a Terry stop, however, as such an investigative detention is temporary, brief, and non-custodial. Id. at 440.

The record here does not reflect that Defendant was subjected to custodial interrogation at any time prior to his arrest after having fled with the firearm. The officers asked Defendant if he owned the car and its contents, and Defendant affirmed that he did. Defendant made such statements in the context of a Terry investigation, and therefore the Miranda warnings were not required.

11

**IV.  Conclusion**

Having reviewed this matter, the Court does not find Defendant's Motion to Suppress well-taken.  The Court notes, however, that Defense counsel made superb arguments on behalf of his client, which gave the Court pause.  The government's evidence does not establish Defendant verbally consented to a search, but the totality of the circumstances show the officers had reasonable suspicions justifying the canine sniff they conducted on Defendant's car.  After the dog alerted, the officers had probable cause to justify a search of the vehicle, including under the hood where the dog specifically alerted.  United States v. Hill, 195 F.3d 258, 273 (6th Cir. 1999).  Defendant's subsequent actions placed evidence in plain view.  The government may therefore properly introduce the firearms and ammunition, Exhibits 1, 2, 3(a) and 3(b), in its prosecution of Defendant under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Accordingly, the Court DENIES Defendant's Motion to Suppress (doc. 20).  This matter shall proceed to trial on May 1, 2007, as previously scheduled (doc. 19).


SO ORDERED.

Date: April 24, 2007          /s/ S. Arthur Spiegel

                              S. Arthur Spiegel
                              United States Senior District Judge

13